A92A1572. PARK LEASING COMPANY v. TWS, INC. et al.
(426 SE2d 620)

CARLEY, Presiding Judge.

A simplified statement of the relevant facts is as follows: Appellant-plaintiff is in the business of leasing Maytag laundry equipment. The Richard Company is in the business of distributing Maytag laundry equipment. After negotiations with The Richard Company, appellee-defendant entered into a lease of commercial Maytag laundry equipment from appellant. Appellee then opened and began to operate a laundry, but it eventually defaulted on its lease and the equipment was repossessed by appellant. Appellant brought suit for breach of the lease and appellee counterclaimed, alleging alternative claims for fraud and violations of both the Sale of Business Opportunities Act (SBOA) and the Fair Business Practices Act (FBPA). The case was tried before a jury and special verdicts were returned in favor of appellee as to appellant's main claim and appellee's counterclaims. Appellant appeals from the judgments entered by the trial court on

the jury's verdicts.

1. Appellant enumerates as error the denial of its motion for a directed verdict as to appellee's counterclaim for violation of the SBOA.

OCGA § 10-1-410 (10) defines "seller" as "any person who offers to sell to *individuals* any *business opportunity,* either directly or through any *agent.*" (Emphasis supplied.) Appellant first urges that it cannot be a "seller" under this definition because appellee is a corporation and not an "individual." However, the term "individual" "may, in proper cases, include artificial persons." Black's Law Dictionary (5th ed. 1979). Reading OCGA § 10-1-410 (10) in pari materia with the other applicable definitions of the SBOA, it is clear that a "seller" includes one who offers to sell to a real *or* an artificial person. " 'Purchaser' means any *person* who is solicited to become obligated, or does become obligated, under any agreement." (Emphasis supplied.) OCGA § 10-1-410 (9). " 'Person' means . . . any *corporation. . . .*" (Emphasis supplied.) OCGA § 10-1-410 (8). Accordingly, the fact that appellee is a corporation would not preclude a finding that appellant is a "seller" as defined in OCGA § 10-1-410 (10).

Appellant further urges that, even if appellee is an "individual," the lease of commercial laundry equipment to appellee would not constitute a "business opportunity." However, former OCGA § 10-1-410 (2) (A) (iii) (Ga. L. 1988, pp. 1868, 1870), which is applicable here, provided, in relevant part: " 'Business opportunity' means the sale or lease of, or offer to sell or lease, any products, equipment, supplies, or services for the purpose of enabling the purchaser to start a business and in which the seller or company represents . . . [t]hat, in conjunction with any agreement which requires a total initial payment of an amount exceeding $500.00, the purchaser may or will derive income from the business opportunity which exceeds the initial payment for the business opportunity. . . ." There was evidence that, in negotiating the lease of the commercial laundry equipment, The Richard Company had made such a representation to appellee regarding the income to be derived from opening a laundry.

Appellant urges that The Richard Company was not its agent. A review of the record shows, however, that there was sufficient evidence of The Richard Company's agency to withstand appellant's motion for directed verdict. *Potomac Leasing Co. v. Thrasher,* 181 Ga. App. 883, 884 (1) (354 SE2d 210) (1987). As The Richard Company's principal, appellant would be bound by the representation. OCGA § 10-6-56. That representation would serve to show that appellant's lease of commercial laundry equipment to appellee was a "business opportunity" within the meaning of former OCGA § 10-1-410 (2) (A) (iii). *Hornsby v. Phillips,* 190 Ga. App. 335, 338 (2) (378 SE2d 870) (1989).

Insofar as violation of the SBOA is concerned, it was stipulated that neither appellant nor The Richard Company had complied with the registration requirements of SBOA. There was also evidence that the disclosures required by the SBOA had not been made to appellee. Accordingly, "within one year of the date of contract, upon written notice to [appellant], [appellee] may void the contract and shall be entitled to receive from [appellant] all sums paid to [appellant]." OCGA § 10-1-417 (a). There was evidence of written notice to appellant. Appellant did not deny receipt of this notice and it was for the jury to determine whether the notice had, in fact, been received by appellant. *Parnell v. Etowah Bank*, 144 Ga. App. 794, 796 (1) (242 SE2d 487) (1978). It follows, therefore, that the question of whether, pursuant to OCGA § 10-1-417 (a), appellee was authorized to void the lease and to recover from appellant all sums paid thereunder was properly submitted to the jury.

Insofar as the merits of appellee's recovery under OCGA § 10-1-399 as a remedy for violation of the SBOA is concerned, appellant's reliance upon *Zeeman v. Black*, 156 Ga. App. 82 (273 SE2d 910) (1980) is misplaced. Appellant's *failure* to comply with the registration requirements of the SBOA or to make the requisite disclosures mandated by the SBOA would not constitute a *misrepresentation* made to appellee. Moreover, unlike *Zeeman v. Black*, supra, wherein the misrepresented quantum of land was a matter of public record, appellee's lack of diligence in ascertaining the falsity of any misrepresentations made to it by The Richard Company does not appear *as a matter of law*. " ' "Ordinarily the question whether the complaining party could have ascertained the falsity of the representations by proper diligence is for determination by the jury." (Cit.)' [Cit.]" *Zeeman v. Black*, supra at 87.

The record demonstrates that, pursuant to OCGA § 10-1-399 (b), appellee made a timely "written demand for relief, identifying [itself] and *reasonably describing* the [violations of the SBOA as the] unfair or deceptive act or practice relied upon and the injury suffered. . . ." (Emphasis supplied.) If appellant had been of the opinion that the relief demanded therein was too great or that the description therein of the injury suffered was unreasonable, it could have made a written tender of settlement which, if rejected, would have served to limit appellee's recovery at trial if appellant's tender proved to be "reasonable in relation to the injury *actually* suffered by [appellee]." (Emphasis supplied.) OCGA § 10-1-399 (b). Appellant made no tender whatsoever. Accordingly, appellee was entitled to recover the actual damages proved at trial and was not limited to a recovery of the amount of any non-existent pre-trial tender by appellant.

Appellant's contention that it was entitled to a directed verdict because it did not receive the notice contemplated by OCGA § 10-1-

399 (b) is without merit. *Parnell v. Etowah Bank*, supra.

Appellant does not contend that the evidence would not authorize a finding that its violation of the SBOA was intentional and that, pursuant to OCGA § 10-1-399, a trebling of appellee's actual damages and appellee's recovery of exemplary damages and attorney's fees would not, therefore, be authorized. It follows that the trial court correctly denied appellant's motion for a directed verdict as to appellee's recovery pursuant to OCGA § 10-1-399 as a remedy for the violation of the SBOA.

2. Appellant's enumerations of error as to several evidentiary rulings have been considered and found to be without merit.

3. Appellant enumerates as error the denial of its motion for a directed verdict as to appellee's alternative counterclaims for fraud and violation of the FBPA. In the jury's special verdicts, however, no damages were awarded under those alternative counterclaims which were not otherwise awarded under the counterclaim for appellant's violation of the SBOA. Since we have found no reversible error in the denial of appellant's motion for a directed verdict as to appellee's counterclaim for violation of the SBOA and no reversible error as to the trial court's evidentiary rulings, it follows that error, if any, in the denial of appellant's motion for a directed verdict as to appellee's alternative counterclaims would be harmless. Compare *Georgia Power Co. v. Busbin*, 242 Ga. 612, 616 (8) (250 SE2d 442) (1978). Any reversal of the denial of appellant's motion for a directed verdict as to those alternative counterclaims would not affect the validity of the judgment entered on the jury's verdict as to appellee's counterclaim for appellant's violation of the SBOA.

4. Appellant enumerates as error the denial of its motion for a directed verdict as to its main claim for appellee's violation of the lease. Appellant's sole contention is that, by failing to rescind the lease promptly pursuant to OCGA § 13-4-60, appellee waived any defense predicated upon fraud in the inducement.

Pretermitting rescission for fraud pursuant to OCGA § 13-4-60, OCGA § 10-1-417 (a) provides that, in the case of a violation of the SBOA, "within one year of the date of the contract, upon written notice to the seller, the purchaser or participant may *void* the contract and shall be entitled to receive from the seller all sums paid to the seller." (Emphasis supplied.) As held in Division 1, the evidence in the instant case authorized a finding that appellant violated the SBOA and that appellee provided timely written notice thereof. It follows, therefore, that the trial court did not err in denying appellant's motion for a directed verdict on its main claim on the ground that appellee had not also attempted to void the lease pursuant to OCGA § 13-4-60.

*Judgment affirmed. Pope and Johnson, JJ., concur.*

Decided December 2, 1992 —
Reconsideration denied December 17, 1992

*Thompson, O'Brien, Kemp & Nasuti, William M. Coolidge III,
Cashin, Morton & Mullins, Richard W. Gerakitis, John C. Clark,* for
appellant.
*Stanley G. Jackson,* for appellees.